## Case No. 24-7251

*In the*

# United States Court of Appeals

*for the*

# Ninth Circuit

WEIRD SCIENCE, LLC;
WILLIAM ANDERSON WITTEKIND, derivatively on behalf of Renovaro Biosciences, Inc.,
*Plaintiffs-Appellants,*

v.

RENE SINDLEV; MARK DYBUL; GREGG ALTON; JAMES SAPIRSTEIN;
JAYNE MCNICOL; HENRIK GRONFELDT SORENSEN; PASECO APS;
OLE ABILDGAARD; KARSTEN REE HOLDING I APS; KARSTEN REE HOLDING B APS;
KARSTEN REE; PO-MA INVEST APS; TBC INVEST AS; TORBEN BJORN CHRISTENSEN;
K&L GATES, LLP; CLAYTON E. PARKER; LINCOLN PARK CAPITAL FUND, LLC;
RS GROUP APS; RS BIO APS; RENOVARIO, INC.; CAROL L. BROSGART;
AVRAM MILLER; KAREN BRINK; YALLA YALLA, LTD.; DOES, 1-10; CARL L. BROSGART,
*Defendants-Appellees.*

_____

*On Appeal from the United States District Court for the Central District of California (Los Angeles),*
*Case No. 2:24-cv-00645-HDV-MRW • The Honorable Hernan Diego Vera, District Judge*

## RESPONSE BRIEF OF APPELLEES

MICHAEL J. QUINN
MARIE E. CHRISTIANSEN
**VEDDER PRICE, LLP**
1925 Century Park, East, Suite 1900
Los Angeles, California 90067
Telephone: (424) 204-7700
mquinn@vedderprice.com • mchristiansen@vedderprice.com

*Attorneys for Defendants and Appellees,*
*Rene Sindlev, Mark Dybul, Gregg Alton, Carol Brosgart,*
*Henrik Grønfeldt-Sørensen, James Sapirstein, and Jayne McNicol*



COUNSEL PRESS · (800) 3-APPEAL

PRINTED ON RECYCLED PAPER



# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................. iii

I.     INTRODUCTION ................................................................. 1

II.    JURISDICTIONAL STATEMENT .................................................. 5

III.   STATEMENT OF ISSUES PRESENTED FOR REVIEW ............................ 6

IV.    STATEMENT OF THE CASE .................................................... 6

       A.     Renovaro's History with Appellants ................................ 6

              1.    Merger with Weird Science ................................. 6

              2.    Gumrukcu's Criminal Convictions ......................... 7

              3.    Appellants' Retaliatory Litigation Campaign ............ 8

              4.    Proxy Statement and Appellants' Demand ................. 9

              5.    The Special Committee .................................... 13

              6.    Appellants' First Amended Complaint .................... 13

              7.    Renovaro's Motion to Dismiss the FAC ................... 15

              8.    District Court's Order Granting Motion to Dismiss ...... 19

V.     SUMMARY OF THE ARGUMENT ............................................... 21

VI.    STANDARD OF REVIEW ...................................................... 22

VII.   ARGUMENT ................................................................... 24

       A.     The District Court Did Not Commit Reversible Error When
              It Dismissed Appellants' FAC ...................................... 24

              1.    Appellants' Action Is Absolutely Barred By Their Filing
                    of This Lawsuit Alleging "Demand Futility" Immediately
                    After Making A Pre-Suit Demand On The Renovaro Board ... 24

i

2. The District Court Did Not Commit Reversible Error When It Considered And Rejected Appellants' Insufficient Allegations That The Renovaro Board Wrongfully Refused Appellants' Demands in Bad Faith .........28

    a. The Renovaro Board Did Not Refuse Appellants' Demand, It Immediately Formed a Special Committee to Investigate, as Required by Delaware Law ................31

    b. The District Court Considered and Properly Rejected Appellants' Allegations of a Wrongful Refusal in Bad Faith .......................................................40

B. The District Court Did Not Err When It Denied Appellants' Leave to Amend Their FAC ...............................................................43

VIII. CONCLUSION.........................................................................45

CERTIFICATE OF COMPLIANCE ........................................................47

CERTIFICATE OF SERVICE .................................................................48

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A. J. Indus., Inc. v. U.S. Dist. Ct. for Cent. Dist. of Cal.*,
503 F.2d 384 (9th Cir. 1974) ...................................................................41

*Abbey v. Computer & Comm. Tech. Corp.*,
457 A.2d 368 (Del. Ch. 1983)...................................................................39

*Alison v. General Motors Corp.*,
604 F. Supp. 1106 (D. Del. 1985).............................................................34

*Boeing by Levit v. Shrontz (Boeing II)*,
1994 WL 30542 (Del. Ch. Jan. 19, 1994) ........................................... 38, 39

*Boeing Co. v. Shrontz (Boeing I)*,
1992 WL 81228 (Del. Ch. Apr. 20, 1992)............................................ 27, 30

*Brehm v. Eisner*,
746 A.2d 244 (Del. 2000) .........................................................................38

*BTZ, Inc. v. Nat'l Intergroup, Inc.*,
1993 WL 133211 (Del. Ch. Apr. 7, 1993)........................................ 26, 27, 34

*Busch ex rel. Richardson Elecs., Ltd. v. Richardson*,
2018 WL 5970776 (Del. Ch. Nov. 14, 2018) ...........................................27

*Carlile v. Conoco, Inc.*,
23 F. App'x 963 (10th Cir. 2001) ..............................................................42

*Carro v. Barra*,
2018 WL 11357929 (E.D. Mich. Apr. 3, 2018) .........................................43

*City of Tamarac Firefighters' Pension Tr. Fund v. Corvi*,
2019 WL 549938 (Del. Ch. Feb. 12, 2019) ...............................................27

*Clemons v. Miss.*,
494 U.S. 738 (1990).................................................................................41

*Creamette Co. v. Merlino*,
289 F.2d 569 (9th Cir. 1961) ....................................................................37

*Dahle v. Pope*,
2020 WL 504982 (Del. Ch. Jan. 31, 2020)......................................... 25, 26

*Drachman v. Cukier*,
2021 WL 5045265 (Del. Ch. Oct. 29, 2021) ........................................30

*FLI Deep Marine LLC v. McKim*,
2009 WL 1204363 (Del. Ch. Apr. 21, 2009) .......................................27

*Grimes v. Donald*,
673 A.2d 1207 (Del. 1996) ................................................................27

*IBEW Local Union 481 Defined Contribution Plan & Trust on
Behalf of GoDaddy, Inc. v. Winborne (GoDaddy)*,
301 A.3d 596 (Del. Ch. 2023) ...........................................................33

*In re Old Bpsush, Inc.*,
2021 WL 4453595 (D. Del. Sept. 29, 2021) ........................................42

*In re Walt Disney Co. Derivative Litig.*,
906 A.2d 27 (Del. 2006) ............................................................. 42, 43

*Ironworkers Dist. Counsel of Philadelphia & Vicinity Ret. & Pension Plan v.
Andreotti (Ironworkers)*,
2015 WL 2270673 (Del. Ch. May 8, 2015) ........................... 31, 32, 34

*Levine v. Smith*,
591 A.2d 194 (Del. 1991) ...................................................................38

*Lucas v. Lewis*,
428 F. App'x 694 (9th Cir. 2011) .......................................................34

*Nat'l Wildlife Fed'n v. Burlington N. R.R., Inc.*,
23 F.3d 1508 (9th Cir. 1994) .............................................................37

*Potter v. Hughes*,
546 F.3d 1051 (9th Cir. 2008) ...........................................................23

*Quantum Tech. Partners II, L.P. v. Alman Browning & Co.*,
436 F. App'x 792 (9th Cir. 2011) ................................................ 19, 27

*Rich ex rel. Fuqi Int'l, Inc. v. Yu Kwai Chong*,
66 A.3d 963 (Del. Ch. 2013) .............................................................37

*Rosenbloom v. Pyott*,
765 F.3d 1137 (9th Cir. 2014) ...........................................................24

*Savage v. Hadlock*,
296 F.2d 417 (D.C. Cir. 1961) ...........................................................42

iv

*Schwartz v. Perseon Corp.*,
175 F. Supp. 3d 390 (D. Del. 2016) ........................................................ 27, 38, 39

*Solak on Behalf of Ultragenyx Pharmaceutical Inc. v. Welch*,
No. CV 2018-0810-KSJM, 2019 WL 5588877 (Del. Ch. Oct. 30, 2019),
*aff'd*, 228 A.3d 690 (Del. 2020) .................................................................. 20, 27

*Spiegel v. Buntrock*,
571 A.2d 767 (Del. 1990) ........................................................................... *passim*

*Sprando v. Hart*,
527 F. App'x 646 (9th Cir. 2013) .......................................................................23

*Sprint/United Mgmt. Co. v. Mendelsohn*,
552 U.S. 379 (2008) ............................................................................................29

*Stepak v. Addison*,
20 F.3d 398 (11th Cir. 1994) .............................................................................30

*Stone v. Ritter*,
911 A.2d 362 (Del. 2006) ..................................................................................43

*Stotland v. GAF Corp.*,
469 A.2d 421 (Del. 1983) ..................................................................................27

*Wochos v. Tesla, Inc.*,
985 F.3d 1180 (9th Cir. 2021) ...........................................................................24

**Rules**

Fed. R. Civ. P. 12(b)(6) ......................................................................................23

Fed. R. Civ. P. 23.1 ....................................................................................... *passim*

## I. __INTRODUCTION__

This case arises out of a years-long multi-jurisdictional war of litigation between derivative Plaintiffs-Appellants Weird Science LLC ("Weird Science") and Anderson Wittekind ("Wittekind," and collectively with Weird Science, "Appellants"), and Wittekind's husband, Serhat Gumrukcu ("Gumrukcu"), on one side, and nominal defendant Renovaro Biosciences, Inc. ("Renovaro") on the other. Renovaro is a publicly traded pre-clinical biotechnology company incorporated in Delaware. At all times relevant to this dispute, it focused on developing advanced allogeneic cell and gene therapies to promote stronger immune system responses during cancer and HIV treatments. These therapies were developed in part with Gumrukcu, Weird Science's largest equity holder and a former scientific advisor and inventor of certain technology licensed or purchased by Renovaro. Gumrukcu also happens to be a convicted murderer and serial fraudster, who defrauded Renovaro of tens of millions of dollars. Since Gumrukcu's arrest for murder and fraud, and his subsequent ouster from Renovaro, he and Wittekind have used Weird Science to wage a retaliatory litigation campaign against Renovaro in an attempt to extort millions more dollars from the company. This defective lawsuit against former Renovaro board members/Appellees Rene Sindlev (who also served as the board's chairman) ("Sindlev"), Mark Dybul, Gregg Alton, Carol Brosgart, Henrik Grønfeldt-

Sørensen, James Sapirstein, and Jayne McNicol (collectively, the "Renovaro Board" or "Appellees") is but one skirmish in the larger war.

The hostility between Appellants and Renovaro is hardly disputable. Appellants' counsel even admitted during the hearing before the District Court on the Renovaro Board's Motion to Dismiss (the "Motion") that, based on the parties' history, she did not believe Appellants would ever be satisfied with the Renovaro Board's response to the purported misconduct described in the complaint, no matter what action they took. She has also admitted that this is the very reason Appellants' complaint alleges that making a demand on the board would have been futile, and the demand requirement of Federal Rule of Civil Procedure 23.1 is therefore excused. Yet despite making these demand futility allegations in their pleadings, Appellants inexplicably sent a demand for corrective action to the Renovaro Board and then mere days later, filed this lawsuit.

Specifically, Appellants sent their letter listing twenty-one separate demands for corrective action after close of business for the Renovaro Board members on Friday, January 19, 2024, less than four business days before Renovaro was scheduled to hold a special meeting of stockholders (the "Special Meeting") to vote on its acquisition of GEDi Cube Inc. ("GEDi Cube")—a transaction that Renovaro had announced almost four months prior. The letter also attached a draft of the complaint that was ultimately filed in this action. Appellants threatened in

their demand letter that if the Renovaro Board did not capitulate to their demands by the end of the next business day, they would file the complaint and seek to enjoin the shareholder vote.

Because the Renovaro Board did not, and indeed, could not, immediately acquiesce and act on all of Appellants' demands in the less than four business days before the Special Meeting, Appellants filed their lawsuit only two business days after sending the letter. Despite having sent a demand to the board, Appellants' complaint alleged that demand on the board would be futile, and was therefore, excused. This, however, was a fatal error, as it is black letter Delaware law that, having made a pre-suit demand on the board, Appellants were precluded from then filing a complaint alleging demand futility. Indeed, Appellants do not dispute that this law, as applied by the District Court when it dismissed Appellants' complaint, is the correct legal standard in these circumstances.

Realizing too late the error they had made, and trying to reverse their clear violation of Delaware law, Appellants claimed that the demand letter was not actually a pre-suit demand—an argument quickly and properly disposed of by the District Court. Appellants then attempted to amend the allegations via their brief opposing the Motion—an effort they continue in their Opening Brief here—to claim, in the alternative, that the Renovaro Board's failure to act on their twenty-one demands in the four days between sending the demand and the scheduled

- 3 -

Special Meeting amounted to a wrongful refusal in bad faith. But this claim is belied by the very text of the demand, which demanded only that a smaller subset of their demands needed to be acted upon before the Special Meeting, and even acknowledged that taking action on them in only four business days was improbable.

Appellants' claims that the Renovaro Board did nothing in response to their demand are also not well taken because, in fact, the opposite is true. After receiving Appellants' demands, the Renovaro Board appointed a Special Committee of independent directors to investigate the demands (plus an additional fifteen topics of investigation identified by Appellants in a supplemental demand)—which is precisely what a conflicted board of directors is supposed to do. Appellants point to the fact that the Special Committee took too long to conduct its investigation and did not provide them with updates throughout as support for their wrongful refusal claims. But Delaware does not require a special committee conducting an investigation to keep informed derivative plaintiffs who continue their litigation notwithstanding the committee's investigation, and has repeatedly rejected such facts as evidence of wrongful refusal in bad faith.

The District Court similarly rejected Appellants bad faith allegations and arguments, even though it did not provide a more fulsome analysis of this argument in its order dismissing the complaint. These arguments were fully

addressed in the briefing on the Motion, as well as discussed at length during the hearing. The District Court clearly had all of the alleged facts and the law before it when it made its decision, and its silence as to bad faith in the order constitutes an implicit rejection of Appellants' arguments, not reversible error.

Nor was it error for the District Court to deny Appellants leave to amend, which is common in situations like this where a plaintiff clearly violated Rule 23.1 by issuing a pre-suit demand then immediately filing a lawsuit alleging demand futility, a defect that cannot be cured by amended allegations. Moreover, the allegations of bad faith Appellants propose to add to an amended complaint, all of which allegedly occurred months after the purported refusal, were considered by the District Court, which found them irrelevant to the issues here.

Because the District Court correctly applied Delaware law to dismiss Appellants' improperly-filed complaint, and Appellants have failed to identify any reversible error in the District Court's order, the Renovaro Board respectfully requests that this Court affirm the order in its entirety.

## II.    **JURISDICTIONAL STATEMENT**

The Renovaro Board agrees with the jurisdictional statement set forth by Appellants. *See* Opening Brief at 4.

III. **STATEMENT OF ISSUES PRESENTED FOR REVIEW**

1.     Whether the District Court erred in finding that Appellants failed to adequately allege wrongful refusal of their demand under Federal Rule of Civil Procedure 23.1.

2.     Whether the District Court erred when it denied Appellants leave to amend their complaint with allegations it had already considered and deemed irrelevant.

IV. **STATEMENT OF THE CASE**

    A.    **Renovaro's History with Appellants**

        1.    **Merger with Weird Science**

Sindlev first met Gumrukcu in or around October 2016.  The two discussed Renovaro's mission to identify, research, develop, and commercialize gene-modified cell and immunological therapies.  Gumrukcu claimed that he worked in research and development for treatments of serious diseases, and that he already owned certain technologies to treat patients with HIV and cancer.  Based on Gumrukcu's representations during this meeting, Sindlev and the rest of the Renovaro Board considered partnering with him to pursue various opportunities, including a potential cure for HIV.  In early 2017, Renovaro, Gumrukcu, and Weird Science began discussions that culminated in a merger between Renovaro and Weird Science which closed on February 16, 2018.  Per the agreement, Weird Science received 17,545,283 shares (of the 18,081,962 total shares issued in

connection with the merger) of Renovaro common stock at closing.  At the time of the merger, Gumrukcu held 60% of the equity in Weird Science and Wittekind was one of its managers.  At some point, Weird Science transferred some or all of its Renovaro shares to Gumrukcu and Wittekind individually.

### 2. Gumrukcu's Criminal Convictions

Unbeknownst to Renovaro, throughout their discussions and negotiations with Gumrukcu and Weird Science, Gumrukcu was perpetrating an extensive, unrelated fraudulent scheme that culminated in the murder of a potential whistleblower.  (3-ER-414.)  While Gumrukcu and Weird Science were involved in the merger discussions with Renovaro, Gumrukcu learned that the whistleblower was complaining about Gumrukcu's extensive fraud and suggested that criminal charges against him should be pursued.  Fearing that the merger with Renovaro would fall through if his criminal acts came to light, Gumrukcu orchestrated a murder-for-hire plot, which resulted in the whistleblower's murder on January 6, 2018.  Just six days later, Renovaro and Weird Science entered into the merger agreement.  On May 24, 2022, Gumrukcu was arrested and criminally charged in Vermont for the murder conspiracy and the years-long fraud he committed against the whistleblower.  Opening Brief at 7.  On April 18, 2025, the jury in Gumrukcu's criminal case convicted him on all charges.

### 3.    Appellants' Retaliatory Litigation Campaign

Prior to Gumrukcu's arrest, Renovaro was unaware of his numerous fraudulent schemes and the murder-for-hire plot.  Following discovery of his criminal acts, and extensive media coverage exposing Gumrukcu as a lifelong fraudster who had falsified and/or forged his medical degrees, Renovaro conducted an internal review of primary data underlying some of the therapeutic pipelines on which Gumrukcu was consulting.  Through this review, Renovaro uncovered evidence that Gumrukcu, Wittekind, and other parties associated with them, had engaged in a scheme to alter, falsify, and misrepresent to Renovaro the results of multiple studies supporting these pipelines so that they could extract millions of dollars from Renovaro.  When this fraud was uncovered, Renovaro filed a lawsuit against Gumrukcu, Wittekind, and a number of their shell companies, styled *Enochian Biosciences, Inc. v. Gumrukcu, et al.*, Case No. 22STCV34071 (Sup. Ct. L.A. Cnty. 2022), and asserting claims in California Superior Court for, among other things, breach of contract and fraud.  (3-ER-360-61.)  Two entity defendants in that case that are owned and controlled by Wittekind and Gumrukcu filed a cross-complaint against Renovaro seeking declaratory relief.  (3-ER-361.)

In retaliation for that lawsuit, Wittekind and Weird Science filed a separate lawsuit against Renovaro, Sindlev, Renovaro's outside counsel, K&L Gates LLP ("K&L Gates"), K&L Gates partner Clayton Parker ("Parker"), and others in

Delaware Chancery Court, styled *Weird Science LLC, et al. v. Renovaro Biosciences Inc., et al.*, Case No. 2023-0599-MTZ (Del. Ch. 2023), alleging similar themes as those found in this lawsuit: that despite the fact that Renovaro had paid Gumrukcu and his various shell companies tens of millions of dollars over the course of their relationship, all of the defendants somehow conspired to deprive Weird Science, Wittekind, and Gumrukcu of the value of their shares. (3-ER-361-62.) Unhappy with the results they were obtaining in their Delaware Chancery Court case, Appellants began looking to take action against Renovaro in other, potentially more friendly, jurisdictions, leading them to file this putative shareholder derivative case.

A few months after this case was filed, Renovaro took further action against Gumrukcu, Wittekind, Weird Science, and their various trusts in the Delaware Chancery Court, styled *Renovaro Inc. v. Gumrukcu, et al.*, Case No. 2024-0678 (Del. Ch. 2024), for their fraudulent concealment of Gumrukcu's murder-for-hire plot and other extensive fraudulent conduct, which caused Renovaro substantial harm. (2-ER-109.)

### 4. Proxy Statement and Appellants' Demand

Following Gumrukcu's arrest, and the extensive negative publicity surrounding his various criminal activities, Renovaro's share price dropped precipitously and has never fully recovered. Desiring to maintain Renovaro as

a going concern, the Renovaro Board forged ahead with the company's promising work on, among other things, a therapeutic treatment for pancreatic cancer. (3-ER-450.) To that end, on August 9, 2023, Renovaro disclosed that it had signed a Letter of Intent to enter into a business combination with GEDi Cube, a cutting-edge health AI company. (2-ER-162.) The August 2023 announcement of the GEDi Cube transaction brought over $200 million in much-needed market value to Renovaro's common stock.

On September 29, 2023, the Renovaro Board disclosed that it had approved a Stock Purchase Agreement ("SPA") between Renovaro and GEDi Cube to acquire 100% of the equity interests of GEDi Cube from its equity holders. (2-ER-146, 3-ER-465.) That same day, Renovaro noticed the Special Meeting relating to its proposed acquisition of GEDi Cube, which would take place on January 25, 2024, then filed a preliminary proxy statement on December 22, 2023. (1-ER-003, 2-ER-145-46.) This proxy statement contains all of the facts on which Appellants' complaint was based. Renovaro filed a definitive proxy statement on January 3, 2024, and further supplemented the proxy statement on January 16, 2024. (1-ER-003, 2-ER-145-46.)

Late on Friday, January 19, 2024, Appellants sent the board a draft complaint and letter titled "Demand for Corrective Action." (1-ER-004, 2-ER-127-31.) The letter stated that Appellants' counsel is "writ[ing] to demand that

- 10 -

the Company's Board of Directors (Board) take the following immediate and corrective action . . . ," and identified twenty-one separate corrective actions Appellants wanted the board to take, most of which very clearly could not be done before the Special Meeting, such as Appellants' demands that certain individuals and companies disgorge significant shares and profits, and that the company file a lawsuit against K&L Gates, its corporate counsel. (1-ER-004, 2-ER-128-31.) Appellants' demand letter also gave the board only until close of the following business day to comply with Appellants' demands, or Appellants would file their complaint and seek to enjoin the shareholder vote at the Special Meeting. (2-ER-127-28.) At no point during the four months after the SPA was disclosed, or the weeks after the definitive proxy statement was filed, did Appellants take any steps to raise the issues they ultimately raised after the close of business the Friday before the Special Meeting. This is despite Appellants' counsel's acknowledgment that they had spent over 400 hours reviewing Renovaro's SEC filings, including the proxy statements, and drafting their complaint. (3-ER-490.)

Appellants also named K&L Gates and Parker as defendants in the draft complaint so as to manufacture an immediate conflict of interest to prevent K&L Gates from representing Renovaro or its directors in this suit.[1] After receiving

---

[1] As further proof that this lawsuit is pure gamesmanship designed to damage Renovaro and its shareholders, including by preventing knowledgeable outside counsel from defending it, Appellants never even served the complaint on K&L Gates, or any defendants other than the Renovaro Board.

Appellants' demand on Friday evening, the Renovaro Board worked diligently through the weekend to find and retain new counsel to represent them in this matter, and ultimately managed to retain Michael J. Quinn at Vedder Price only one business day after receiving the demand. (2-ER-056, 3-ER-491.) Mr. Quinn spoke with Appellants' counsel the following Tuesday, less than two business days after Appellants sent their demand. (3-ER-491-92.) He informed them that the Renovaro Board was reviewing their demands but would not agree to delay the Special Meeting. (2-ER-227.) Because the Renovaro Board did not immediately acquiesce to Appellants' demands, Appellants filed their complaint alleging demand futility later that day. (1-ER-003-04.)

Concurrently with their complaint, Appellants filed an *ex parte* application for a temporary restraining order seeking to enjoin the Special Meeting set to occur less than two days later, the morning of January 25, 2024. (1-ER-003.) Following a hearing, the Court denied the application. (1-ER-003.) In its order, the Court took note of the several bright-line legal defects in Appellants' claims that the Renovaro Board had briefed in opposition to the application, including that they violated Delaware law by issuing a pre-suit demand to the Renovaro Board but then immediately filing a complaint alleging demand futility, and that they are not suitable derivative plaintiffs given the numerous lawsuits involving Renovaro in which they are adverse. (3-ER-408-09.)

### 5. The Special Committee

In direct response to Appellants' demand letter, the Renovaro Board appointed a Special Committee of independent directors to investigate the issues raised in the letter. (1-ER-006, 2-ER-268.) The Special Committee retained separate counsel to assist in their investigation into Appellants' demands. (2-ER-268.) Upon learning of the appointment of the Special Committee, Plaintiffs sent a supplemental demand letter to the Renovaro Board on February 27, 2024 that included fifteen new demands for corrective action and "areas of investigation." (1-ER-004, 2-ER-133-40.)

### 6. Appellants' First Amended Complaint

Despite the District Court's observations regarding the bright-line legal defects in Appellants' complaint, the detailed briefing on these issues by the Renovaro Board, and the incurable nature of the defects, Appellants insisted on maintaining this action. The Renovaro Board thus filed a motion for sanctions pursuant to Rule 11 on March 7, 2024. (3-ER-344.) In their opposition to that motion, Appellants stated that they intended to amend their complaint to add allegations regarding circumstances following the Special Meeting, including allegations that would put them on "solid ground to argue demand futility and alternatively a bad-faith rejection of Plaintiffs' pre-Special Meeting efforts . . . ." (3-ER-294-95.) The Court denied the sanctions motion, granted Appellants'

request to amend the complaint, and invited the Renovaro Board to file a motion to dismiss in due course.  (2-ER-244-50.)

Appellants filed their First Amended Complaint ("FAC") on June 21, 2024. (1-ER-004, 2-ER-142.)  In the FAC, Appellants allege that the proxy statements filed by Renovaro omitted material information relating to the board's decision not to obtain a fairness opinion in connection with the GEDi Cube transaction, the identities of consultants who advised on the transaction, and personal connections among certain individuals involved.  (2-ER-146-47.)  The FAC alleges these omissions were material and caused uninformed stockholders to approve the acquisition that provided GEDi Cube with approximately 50% of Renovaro's shares.  (2-ER-148.)

Separately, Appellants allege the Renovaro Board authorized transactions with alleged insiders (Sindlev, RS Bio, RS Group ApS (a company owned and controlled by Sindlev), Ole Abildegaard, Paseco (a company owned and controlled by Abildegaard), and Lincoln Park Capital Fund LLC (allegedly represented by K&L Gates in some of its transactions with Renovaro)) that permitted them to purchase stock pursuant to "spring-loaded" stock options immediately before the release of positive material non-public information.  (2-ER-149.)  Finally, Plaintiffs allege Sindlev and his company, RS Bio, filed Schedule 13D forms that are deficient because they fail to disclose the acquisition of warrants and purchases

made by RS Group and a Section 13(d) "group" allegedly comprised of Sindlev, RS Bio, Abildegaard, and Paseco.  (2-ER-151-53.)

Despite their representations regarding amended allegations to the District Court in response to the Renovaro Board's Rule 11 motion, Appellants' FAC nonetheless continues to exclusively allege demand futility.  (2-ER-225.)  Indeed, in their FAC, Appellants specifically address Delaware's test for demand futility (but *not* its test for wrongful refusal) and attempt to apply it to the Renovaro Board and the conduct alleged in the FAC to establish demand futility.  (2-ER-228-29.) While Appellants include a throwaway reference to wrongful refusal in their FAC by alleging "the Board has consistently acted in bad faith or at least with gross negligence," they then conclude the sentence by saying "the Board is neither disinterested nor independent, and a demand on the Board is futile and therefore excused."  (2-ER-230.)

### 7.    Renovaro's Motion to Dismiss the FAC

Because Appellants failed to cure the numerous fatal defects in their pleadings when they amended their complaint, the Renovaro Board filed its motion to dismiss the FAC on July 19, 2024.  (2-ER-091.)  It moved on the grounds that: (1) Appellants violated Delaware law by sending a pre-suit demand for corrective action to the Renovaro Board, then immediately filing a complaint alleging demand futility; (2) Appellants are not suitable derivative plaintiffs given the

multitude of litigation in which they are adverse to Renovaro[2]; (3) the District Court should abstain from hearing the case under the *Colorado River* doctrine because there is a "substantially similar" pending state court litigation involving related claims arising from the same set of facts; and (4) the FAC fails to state claims for violations of Rule 10b-5 and Sections 14(a) and 13(d) of the Securities and Exchange Act of 1934, breach of fiduciary duty, and corporate waste.  (2-ER-092.)

In their brief opposing the Renovaro Board's Motion, Appellants attempted to argue that their pre-suit letter titled "Demand for Corrective Action" was not actually a demand.  (2-ER-071-72.)  In the alternative, they argued that the

---

[2] The Renovaro Board also argued that Appellants are not suitable derivative plaintiffs because they are not the parties actually pursuing this litigation—their counsel is. (2-ER-111-12.)  For example, Appellants' counsel submitted declarations in support of Apellants' *ex parte* application for a temporary restraining order and their opposition to the Rule 11 motion, while her clients did not submit any declaration in support of either filing.  (3-ER-304, 3-ER-488.) Specifically, in her declaration in support of the *ex parte* application, counsel states: "Along with my co-counsel Patrick T. McCloskey, I have been investigating the issues raised in this derivative complaint and ex parte application for several months. The two of us have worked over 400 hours on these issues, with approximately 200 of those hours worked in the last 30 days . . . ."  (3-ER-490.) She also details her monitoring of Renovaro's SEC filings, as well as her review of "tens of thousands of documents." (3-ER-492.)  Counsel then describes dozens of documents and communications (on which her clients were not copied) relating to the allegations in the complaint, as if she were a fact witness.  (3-ER-492-95.)  It is thus clear that counsel is the driving force behind this litigation, and is the party with knowledge of the facts and legal issues here, not Appellants.

Renovaro Board's failure to act on their twenty-one separate demands before the Special Meeting constituted a wrongful refusal. (2-ER-072-76.) In fact, they laid the blame for their own violation of Delaware law on the Renovaro Board, suggesting that the board should have informed them of the fatal defect in their pleadings before raising it for the first time in opposition to Appellants' application for a temporary restraining order (for which the Renovaro Board was given less than 24 hours to prepare and file a response), and claiming that this "gotcha moment" was a "bad faith gamble [and] a strategic ploy to harm [Appellants]." (2-ER-074.) They further argued that the board's unwillingness to stay—rather than seek dismissal of—this case while the Special Committee investigated Appellants' demands, or to provide Appellants with detailed information about the composition of the Special Committee, its scope of authority, and certified copies of board documents relating to the investigation, amounted to a wrongful refusal of their demands. (2-ER-075-76.)

During the hearing on the Renovaro Board's Motion, the District Court asked the parties to focus their oral arguments on two issues: (1) whether Appellants violated Delaware law by sending a pre-suit demand then filing a complaint alleging demand futility; and (2) the various lawsuits among the parties that the Renovaro Board had asserted make the Appellants unsuitable derivative plaintiffs. (2-ER-023-24.) During the hearing, Appellants also discussed their

alternate theory that, if their letter was found to be a pre-suit demand, the Renovaro Board had wrongfully refused the demand.  (2-ER-025-30.)  During this portion of the hearing, Appellants identified for the District Court all of the factual allegations they believe support their claim of wrongful refusal, including those raised in their Opening Brief here: the Special Committee did not provide updates of its investigation or conclude its investigation in the time desired by Appellants, (2-ER-024-25); the Special Committee did not intervene in this case and agree to stay it as requested by Appellants (2-ER-028); and the board wrongfully refused Appellants' twenty-one demands because it did not comply with their broad requests in the four business days between when the demand letter was sent and the Special Meeting (2-ER-025).

Soon after the hearing on the Motion, and before the District Court issued its Order dismissing the FAC, Appellants filed a Notice of Subsequent Events Related to Pending Motion to Dismiss.  (2-ER-013.)  In that filing, Appellants directed the District Court to a number of SEC filings by Renovaro that they assert were deficient and in violation of SEC rules and regulations.  (2-ER-016-17.)  They also notified the District Court about the resignation of members of the Renovaro board, including the independent directors on the Special Committee, leading to the appointment of new directors.  (2-ER-015.)  Appellants assert in their Opening Brief that these alleged facts constitute additional evidence of bad faith by the

Renovaro Board, and that they should have been permitted to further amend their complaint to include them.

### 8. District Court's Order Granting Motion to Dismiss

On October 29, 2024, the District Court issued its Order granting the Renovaro Board's Motion. (1-ER-002.) It stated as the basis for dismissal: "the [District] Court finds that Plaintiffs inappropriately allege 'demand futility' in the First Amended Complaint after making a pre-suit demand on the [Renovaro] Board Defendants. For that reason, the [Renovaro] Board Defendants' Motion to Dismiss is granted." (1-ER-003.)

Citing *Quantum Tech. Partners II, L.P. v. Alman Browning & Co.*, 436 F. App'x 792, 793 (9th Cir. 2011), the District Court explained that, pursuant to Delaware Chancery Law Rule 23.1, "a plaintiff may not claim demand futility when it has made a demand on the board of directors," as Appellants did here. (1-ER-005.) It further explained that Appellants "do not dispute this well-established principal, but, rather, advance two arguments in response: (1) that the Letter was not a pre-suit demand, and (2) the action must be allowed because the demands in the Letter were wrongfully refused." (1-ER-005.) The District Court rejected both of these arguments.

For starters, it "[found] that the Letter *is* a pre-suit demand," thereby foreclosing Appellants' ability to maintain an action due to the demand futility alleged in their FAC. (1-ER-006 (emphasis in original).) It then considered Appellants' alternate argument, not specifically alleged in the FAC, that the Renovaro Board wrongfully refused Appellants' demands. (1-ER-006-07.) Quoting the Delaware Chancery Court in *Solak on Behalf of Ultragenyx Pharmaceutical Inc. v. Welch*, No. CV 2018-0810-KSJM, 2019 WL 5588877, at *4 (Del. Ch. Oct. 30, 2019), *aff'd*, 228 A.3d 690 (Del. 2020), the District Court stated that: "A plaintiff asserting wrongful refusal must 'allege with particularity facts that give rise to a reasonable doubt as to the good faith or reasonableness of the Board's investigation,' *i.e.*, facts that support an inference that the board committed gross negligence or acted in bad faith." (1-ER-006.)

The District Court evaluated the allegations of the FAC to determine whether Appellants had alleged with the requisite specificity that the Renovaro Board wrongfully refused Appellants' demands. (1-ER-006-07.) The District Court found that, because the Renovaro Board "created a Special Committee to investigate the demands," Appellants "were aware of the creation of the Special Committee," and the investigation was still ongoing, Appellants "cannot at this time plead facts showing that [the] ongoing investigation amounts to gross negligence . . . ." (1-ER-006-07.) The District Court thus granted the Motion and

- 20 -

dismissed Appellants' FAC without prejudice and without leave to amend, noting that amendment would be futile because Appellants already amended once and failed to cure these fatal defects in their pleadings. (1-ER-007.)

The District Court also noted that it: "has reviewed Plaintiff's Notice of Subsequent Event Related to Pending Motion to Dismiss regarding the changes within the Board of Directors' composition. The [District] Court concludes that the events referenced in the Notice are not materially relevant or pertinent to the legal issues regarding demand futility addressed in the [District] Court's order." (1-ER-003 n. 1.)

## V.   <u>SUMMARY OF THE ARGUMENT</u>

The District Court properly dismissed Appellants FAC without leave to amend. Appellants issued a pre-suit demand for corrective action identifying twenty-one separate items for investigation. When the Renovaro Board was unable to take action on these demands within the one business day deadline set by Appellants, they filed this lawsuit alleging demand futility, in clear violation of black letter Delaware law. Appellants do not dispute that the District Court's order dismissing their FAC on these grounds was proper, and the Order should be affirmed.

Trying to correct their fatal mistake, Appellants alleged in their briefing on the Renovaro Board's Motion, and here in their Opening Brief, that the Renovaro

Board actually rejected their demands in bad faith. (2-ER-072-76.) Specifically, they argue that the Renovaro Board's failure to comply with Appellants' demands in the four business days before the Special Meeting, and the Special Committee's lengthy investigation and failure to provide them with updates, amounts to a wrongful refusal in bad faith. But Appellants' allegations of wrongful refusal do not appear with particularity in the FAC, which alleges only demand futility, are not supported by the record, and have been rejected repeatedly by Delaware courts. Moreover, all of these arguments and evidence were presented to the District Court, and it is clear from the record that it considered and tacitly rejected them before issuing its Order. The District Court's omission of a more fulsome analysis of bad faith is not reversible error, and its finding that Appellants failed to adequately allege a wrongful refusal of their demands should be affirmed.

The District Court similarly considered and rejected as irrelevant all of the new allegations Appellants contend they should have been permitted to include in a further amended complaint. (1-ER-003 n. 1.) Given that all of these alleged facts supporting bad faith were before the District Court, it did not commit reversible error when it denied Appellants leave to further amend their FAC.

## VI.   **STANDARD OF REVIEW**

The Renovaro Board does not agree with Appellants' arguments that the *de novo* standard of review is applicable to the District Court's Order dismissing

Appellants' FAC for failure to comply with the demand requirements in Rule 23.1.
*See* Opening Brief at 29-32.  Consistent with well-established precedent, this Court
should review the District Court's Order for abuse of discretion.  *Potter v. Hughes*,
546 F.3d 1051, 1056 (9th Cir. 2008) (rejecting plaintiff's request to review
dismissal of derivative complaint *de novo* and finding "[a]lthough dismissals for
failure to state a claim are reviewed de novo, the district court's determination that
[plaintiff] did not comply with Rule 23.1 or [state] law regarding the demand and
regarding demand futility is reviewed for abuse of discretion."); *Sprando v. Hart*,
527 F. App'x 646, 647 (9th Cir. 2013) ("This court reviews district court
determinations regarding the demand requirement for derivative actions for abuse
of discretion.") (internal citations omitted).

The fact that the District Court cited the Federal Rule of Civil Procedure
12(b)(6) standard for dismissal in its Order is irrelevant and does not compel
application of a *de novo* standard of review.  As in *Potter*, dismissal here was
based on Appellants' failure to comply with the demand requirements of Rule
23.1, not whether they failed to state a claim pursuant to Federal Rule of Civil
Procedure 12(b)(6), which the District Court did not even address.  Even if
dismissal had been pursuant to Federal Rule of Civil Procedure 12(b)(6),
Appellants acknowledge, as they must, that this Court does not apply the default
Rule 12(b)(6) *de novo* standard of review to demand futility cases.  *See* Opening

Brief at 29 (citing *Rosenbloom v. Pyott*, 765 F.3d 1137, 1147 (9th Cir. 2014)).  The only support Appellants cite for their argument that the *de novo* standard of review should apply here is the concurring opinion in *Rosenbloom*, which does not have the force of law.  This Court should follow its own precedent and apply an abuse of discretion standard of review to the District Court's Order dismissing the FAC.

The Renovaro Board agrees with Appellants that denial of leave to amend is reviewed for abuse of discretion, while the question of whether amendment would be futile is reviewed *de novo*.  *See* Opening Brief at 32-33; *see also Wochos v. Tesla, Inc.*, 985 F.3d 1180, 1197 (9th Cir. 2021) ("We review the denial of leave to amend for an abuse of discretion, but we review the question of futility of amendment de novo.").

## VII.  <u>ARGUMENT</u>

### A.  <u>The District Court Did Not Commit Reversible Error When It Dismissed Appellants' FAC</u>

#### 1.  <u>Appellants' Action Is Absolutely Barred By Their Filing of This Lawsuit Alleging "Demand Futility" Immediately After Making A Pre-Suit Demand On The Renovaro Board</u>

Appellants did not dispute before the District Court, nor do they dispute here, that under Delaware law, when a shareholder seeks to sue derivatively on behalf of a corporation, the shareholder must make a choice.  Their first option is to make a pre-suit demand upon the corporation's board of directors, which constitutes a binding admission that the board is properly situated to evaluate their

purported concerns. *Spiegel v. Buntrock*, 571 A.2d 767, 777 (Del. 1990). In that situation, the shareholder must await the board's decision as to the demand, and any such decision is entitled to judicial deference under the "business judgment rule." The second option is, rather than making a demand, the shareholder can file suit but must plead particularized facts showing why demand upon the board would have been futile and thus excused. The shareholder *cannot do both*.

But that is precisely what Appellants did here. They sent their demand letter to the Renovaro Board on January 19, 2024, setting out twenty-one demands for corrective action, and stating that the board had one business day to agree, or Appellants would file the complaint that accompanied the demand letter. (1-ER-004, 2-ER-127-31.) When the Renovaro Board was unable to take action on these numerous demands within the one business day deadline, Appellants filed the complaint. (1-ER-003-04.) Despite having made the pre-suit demand, Appellants' complaint alleged that demand would be futile—allegations they repeated in the FAC. (2-ER-225.) Having made a pre-suit demand, Appellants are deemed to have waived, as a matter of law, any argument that demand would have been futile and did not need to be made prior to filing the lawsuit (i.e., demand excused), and thus could not file their lawsuit unless and until the Renovaro Board wrongfully refused to take action on their demands.

The Delaware Court of Chancery squarely addressed this very scenario in *Dahle v. Pope*, 2020 WL 504982 (Del. Ch. Jan. 31, 2020). Relying on the

Delaware Supreme Court decision in *Spiegel*, the Court of Chancery held:

> Delaware's common law of corporations makes it clear that when a stockholder makes a demand upon the company board to take legal action, she is ***conceding*** that the directors are able to bring their business judgment to bear to consider that demand. If the board fails to take the action demanded, and the stockholder then wishes to pursue the matter derivatively on behalf of the corporation, ***she cannot successfully assert that the derivative action is justified because the board is unable to consider the matter free of disabling conflict; that is the very concession the stockholder is deemed to have made by making the demand in the first instance . . .***
>
> Under Delaware law, a stockholder plaintiff bringing a derivative suit has two options: make a pre-suit demand on the board, or plead demand futility. The pre-suit demand—if properly rejected—leads to a higher pleading burden. ***These options are mutually exclusive: a stockholder is not permitted to have his cake and litigate it, too.***

*Id*. at *1-4 (emphasis added). The *Dahle* court thus dismissed the action on the pleadings, given the plaintiff's attempt to file suit shortly after making a pre-suit demand for corrective action, as Appellants did here. *See also BTZ, Inc. v. Nat'l Intergroup, Inc.*, 1993 WL 133211, at *3 (Del. Ch. Apr. 7, 1993) (finding lawsuit premature where plaintiff gave board only eight days to respond to demands before filing suit). This is consistent with the Delaware Supreme Court's pronouncement that, "*[b]y electing to make a demand, a shareholder plaintiff tacitly concedes the independence of a majority of the board to respond.* Therefore, when a board refuses

a demand, the only issues to be examined are the good faith and reasonableness of its investigation." *Spiegel*, 571 A.2d at 777 (emphasis added).

This longstanding and well-established principle of Delaware law has been clearly articulated in numerous cases over the past several decades, including by this Court. Indeed, Appellees are unaware of a single case holding otherwise. *See, e.g., Quantum Tech.*, 436 F. App'x at 792 ("Quantum can't claim demand futility because it made demand on Apex's board of directors.") (citing *Spiegel*); *Busch ex rel. Richardson Elecs., Ltd. v. Richardson*, 2018 WL 5970776, at *8 (Del. Ch. Nov. 14, 2018) ("Where, by contrast, a stockholder elects to make a demand on the corporation to take action, the stockholder tacitly concedes the independence of a majority of the board to respond."); *City of Tamarac Firefighters' Pension Tr. Fund v. Corvi*, 2019 WL 549938, at *6 (Del. Ch. Feb. 12, 2019); *Grimes v. Donald*, 673 A.2d 1207, 1219 (Del. 1996), *overruled, in part, on other grounds*; *Solak*, 2019 WL 5588877, at *5 ("Delaware law prohibits a stockholder from both making a demand and pleading demand futility"); *Boeing Co. v. Shrontz (Boeing I)*, 1992 WL 81228, at *5 (Del. Ch. Apr. 20, 1992); *BTZ*, 1993 WL 133211, at *3; *FLI Deep Marine LLC v. McKim*, 2009 WL 1204363, at *3 (Del. Ch. Apr. 21, 2009); *Schwartz v. Perseon Corp.*, 175 F. Supp. 3d 390, 403 (D. Del. 2016); *Stotland v. GAF Corp.*, 469 A.2d 421, 422-23 (Del. 1983).

This clear precedent is the legal standard correctly applied to the FAC by the District Court, leading to its dismissal. Appellants made a demand on the Renovaro Board, thereby waiving as a matter of law any argument that demand would have been futile. Having made the demand, Appellants were required to give the board an opportunity to investigate and make a decision as to the corrective action demanded *before* they could file suit. Instead, Appellants improperly filed their complaint alleging demand futility, in violation of Delaware law.

Appellants do not, and cannot, dispute that the District Court's Order dismissing their FAC on these grounds was legally and factually correct. This is sufficient basis on its own for dismissal of the FAC, and the Renovaro Board respectfully requests that this Court affirm the District Court's Order dismissing the FAC for failure to comply with the demand requirements of Rule 23.1.

### 2. The District Court Did Not Commit Reversible Error When It Considered And Rejected Appellants' Insufficient Allegations That The Renovaro Board Wrongfully Refused Appellants' Demands in Bad Faith

As with the District Court's dismissal of the FAC on demand futility grounds, Appellants do not dispute the District Court's finding that they failed to allege the Renovaro Board wrongfully refused their demand due to gross negligence. Rather, they argue only that the District Court committed reversible error by not providing a more fulsome analysis of their bad faith allegations in its

- 28 -

Order.  But Appellants' theory of bad faith, which is not alleged with particularity in the FAC, was presented to the District Court in the briefing and during the hearing on the Motion.  (2-ER-025-30, 2-ER-072-76.)  The District Court thus necessarily considered these allegations and arguments, and its decision to omit a discussion of them in the Order was a tacit rejection, not reversible error.[3]

As an initial matter, Appellants' attempts to plead both demand futility and wrongful refusal simultaneously is both illogical and impermissible, and neither the District Court nor this Court is required to consider Appellants' wrongful refusal allegations—which are not even presented as a wrongful refusal in the FAC—in the alternative.  It is clear that Appellants are merely attempting to "cover the bases" after the Renovaro Board brought to their attention that their filing of a complaint alleging demand futility only two days after issuing a pre-suit demand was an incurable defect.  The Renovaro Board has not found any cases

---

[3] Should this Court determine that the District Court's Order is ambiguous as to its consideration and rejection of Appellants' "bad faith" arguments, Appellees respectfully submit that "the better approach" would be to remand to the District Court for clarification rather than reverse for abuse of discretion.  *See Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 386 (2008) ("When a district court's language is ambiguous, as it was here, it is improper for the court of appeals to presume that the lower court reached an incorrect legal conclusion.  A remand directing the district court to clarify its order is generally permissible and would have been the better approach . . .").

permitting such tactics.[4]  Some courts, however, have addressed the impropriety of this tactic when deployed in two distinct derivative actions and rejected plaintiffs' efforts to "cover the bases" as Appellants seek to do here.  *See, e.g., Boeing I*, 1992 WL 81228, at *5 (rejecting plaintiffs' argument that Rule 23.1 was not violated where one plaintiff sent a demand to the board which was later refused and the other alleged demand futility: "Plaintiffs cannot use either of the devices suggested here to, in essence, cover all the bases.  The *Spiegel* court held that stockholders must make a choice either to make a demand or attempt to establish demand futility."); *Stepak v. Addison*, 20 F.3d 398, 411-12 (11th Cir. 1994) (affirming dismissal where plaintiff alleged demand futility after another plaintiff sent a demand relating to the same claims that they alleged was wrongfully refused).   In none of those cases, however, were plaintiffs bold enough to allege both theories within the same action, although such boldness clearly warrants the

---

[4] Appellants cite to *Drachman v. Cukier*, 2021 WL 5045265 (Del. Ch. Oct. 29, 2021), in which the derivative plaintiff alleged that the board refused his demand in a section of the complaint called "Demand Futility Allegations."  *Id*. at *3.  However, in that case, defendants conceded that they had rejected plaintiff's demand and that wrongful refusal was the proper standard for the court's analysis of their motion to dismiss pursuant to Rule 23.1.  *Id*. at *4.  The court thus found that the complaint, which contained clear allegations of wrongful refusal throughout, sufficiently alleged wrongful refusal, despite its inartful drafting.  Importantly, the court also clearly stated that the plaintiff's complaint could not allege both demand futility and wrongful refusal: "Stockholders must . . . fulfill the demand requirement—*either* by pleading demand futility *or* wrongful refusal—to have standing."  *Id*. at *6 (emphasis added).

same result.  But if the Court is nonetheless inclined to consider Appellants'

wrongful refusal allegations, it should affirm the District Court's order finding the

allegations insufficient.

> ### a.   The Renovaro Board Did Not Refuse Appellants' Demand, It Immediately Formed a Special Committee to Investigate, as Required by Delaware Law

Because Appellants issued a pre-suit demand to the Renovaro Board, they

conceded its ability to evaluate and respond to their concerns, and any decision by

the board in response to their demand is entitled to judicial deference under the

"business judgment rule."  If the board rejects a plaintiff's demand, the plaintiff

then lacks standing to bring the litigation derivatively "unless the board's refusal is

wrongful; that is, the refusal itself is a breach of the directors' fiduciary duties."

*Ironworkers Dist. Counsel of Philadelphia & Vicinity Ret. & Pension Plan v.*

*Andreotti (Ironworkers)*, 2015 WL 2270673, at *25 (Del. Ch. May 8, 2015).  It is

only then that the inquiry may turn to the "good faith and reasonableness of its

investigation."  *Spiegel*, 571 A.2d at 777.

A derivative shareholder alleging wrongful refusal in bad faith must "plead

particularized facts . . . that show a board decision so inexplicable that a court may

reasonably infer that the directors must have been acting for a purpose unaligned

with the best interest of the corporation; that is, in bad faith."  *Ironworkers*, 2015

WL 2270673, at *26.  "Demonstrating that directors have breached their duty of

loyalty by acting in bad faith goes far beyond showing a questionable or debatable decision on their part . . .  For the actions of directors to have been in bad faith, the directors must have acted with scienter, i.e., with a motive to harm, or with indifference to harm that will necessarily result from the challenged decision— here, that decision being rejection of the Plaintiff's demand." *Id*. at 27.  Courts evaluating a board's bad faith refusal of a demand necessarily examine the board's conduct after the demand because a board cannot reject a demand "with a motive to harm, or with indifference to harm" before a demand has even been made.

Here, however, Appellants rely in part on the purported misconduct of the Renovaro Board *before* the pre-suit demand was made, to support their allegations of a bad faith wrongful refusal of the demand issued sometime later.  *See* Opening Brief at 28 ("These allegations of bad faith involve the allegations of corporate wrongdoing themselves . . .").  Specifically, they claim that they filed this lawsuit "after nearly a year of back-and-forth correspondence and litigation with the [Renovaro Board] and K&L Gates.  At every step, the Defendants, in bad faith, sought to deny Plaintiffs their rights as Renovaro stockholders."  Opening Brief at 22.  With respect to the GEDi Cube transaction, Renovaro filed its preliminary proxy statement just a few days before Christmas, which purportedly "was also evidence of the Board's bad faith." *Id*. at 22.  If anything, these allegations of alleged bad faith that occurred before a demand was ever made could only have

supported Appellants' claim of demand futility, but they cannot support a claim of wrongful refusal and should be disregarded.

Appellants cite *IBEW Local Union 481 Defined Contribution Plan & Trust on Behalf of GoDaddy, Inc. v. Winborne (GoDaddy)*, 301 A.3d 596, 619 (Del. Ch. 2023), for the purported proposition that the Court should consider the allegations in the FAC holistically, including the pre-demand allegations of corporate misconduct, to find that the Renovaro Board wrongfully refused Appellants' demands. But *GoDaddy* is a demand futility case, not wrongful refusal. So, necessarily, the court there was only examining the pre-lawsuit conduct of the board to determine whether it was disinterested and independent, and acted in good faith with respect to the corporate transactions being challenged in the complaint, such that demand was excused. The court *was not* evaluating allegations of the board's pre-lawsuit conduct to determine that its post-lawsuit (or in this case, post-demand) conduct constituted bad faith. So while *GoDaddy* may support a conclusion that allegations of bad faith wrongful refusal should be considered holistically rather than piecemeal, it does not alter the requirement that such allegations must relate to conduct that occurred after a demand was made.

Appellants' allegations of post-demand bad faith are similarly deficient, and certainly do not rise to the level of demonstrating "a board decision so inexplicable that a court may reasonably infer that the directors must have been acting for a

purpose unaligned with the best interest of the corporation." *Ironworkers*, 2015 WL 2270673, at *26. As an initial matter, the words "wrongful refusal" do not even appear anywhere in the FAC. Rather, what few allegations there are appear in a section titled "Demand on the Board Would be Futile." (2-ER-225.) Moreover, Appellants' claim that their twenty-one item demand letter sought only corrective action before the Special Meeting, and that the Renovaro Board's failure to act on those demands in the four business days before the Special Meeting amounted to a wrongful refusal, not only defies credulity, but is also belied by the very text of the demand itself. Indeed, the impossibility of the Renovaro Board's compliance, which Appellants claim was a wrongful refusal, was entirely a product of Appellants own making due to their eleventh hour demand even though they had known about the GEDi Cube transaction and Special Meeting for months. Similar arguments have been repeatedly rejected by Delaware courts. *See, e.g., Lucas v. Lewis*, 428 F. App'x 694, 695-96 (9th Cir. 2011) (affirming dismissal with prejudice where plaintiff alleged wrongful refusal but "did not give the Board enough time to investigate before filing her complaint and thus [] prematurely filed her complaint before the Board had responded to her demand letter"); *BTZ*, 1993 WL 133211, at *3 (finding lawsuit premature where plaintiff gave board only eight days to respond to demands before filing suit) (citing *Alison v. General Motors Corp.*, 604 F.Supp. 1106, 1117-18 (D. Del. 1985) (finding premature lawsuit filed over two months after demand was served)).

The demand letter, served late on Friday, January 19, 2024—after close of business for all of the members of the Renovaro Board—identified twenty-one discrete demands and topics, most if not all of which could not possibly have been acted upon in only four business days. (1-ER-004, 2-ER-127-31.) For example, Appellants sought disgorgement of a significant number of Renovaro shares and profits from certain board members and other shareholders for various reasons, none of them connected to the GEDi Cube transaction that was the subject of the Special Meeting. (2-ER-128-29.) They further demanded that the board investigate, retain new counsel, draft a complaint, and commence a lawsuit against Renovaro's outside counsel, K&L Gates. (2-ER-129-30.) And in direct contradiction to their arguments here and to the District Court that the letter demanded corrective action only before the Special Meeting, the letter actually stated that action on just nine of the twenty-one demands needed to occur before the Special Meeting: "I also demand that the Board correct the disclosure deficiencies described in Nos. 13-21 below **before** the special meeting of stockholders noticed for January 25, 2024 . . . ." (2-ER-128 (emphasis in original).) Acknowledging the impossibility of taking action on even this smaller subset of demands in only four business days, Appellants also noted that they "recogniz[ed] that this may require the Board to postpone the Special Meeting." (2-ER-128.)

Further complicating any prompt response or action by the Renovaro Board, Appellants named K&L Gates as a defendant in the draft complaint accompanying the demand, thereby manufacturing a conflict of interest that necessitated retention of new counsel for this matter. The Renovaro Board worked quickly and diligently through the weekend to retain Mr. Quinn at Vedder Price the following business day. (2-ER-056.) Appellants' claims that "[t]he Board never responded . . . and did not confirm receipt" of their demand are also provably false from documents in the record. Opening Brief at 43. Immediately after his firm was retained, Mr. Quinn reached out to counsel for Appellants to inform them that he had been retained and to schedule a call to discuss the demands in their letter the following morning. (3-ER-491-92.) Because Mr. Quinn did not agree during that call that the Renovaro Board would delay the Special Meeting, Appellants immediately filed their complaint. (3-ER-491-92.) Mr. Quinn never stated or even suggested to Appellants' counsel that the Renovaro Board was rejecting its demands—rather, he informed them that the board needed more time than the one business day set out in their demand letter to investigate and reach a conclusion as to whether any action needed to be taken.

As it was required to do when confronted with a demand that alleged misconduct by some of its directors, in response to the letter the Renovaro Board appointed a Special Committee of independent and disinterested directors to

investigate the concerns outlined in Appellants' demand, as well as the fifteen

additional topics identified in Appellants' supplemental demand. (1-ER-006, 2-

ER-268.) The Special Committee also retained independent counsel to assist in its

investigation. (2-ER-268.) Appellants now inexplicably claim that the length of

the investigation[5] and the Special Committee's failure to provide them with

updates, somehow support their contention that the Renovaro Board rejected their

demand *months earlier*. Appellants identify no authorities that support this

position,[6] however, and in fact, courts have repeatedly found that similar

---

[5] Appellants' allegations in their Opening Brief relating to events that occurred after the District Court's order was issued, including with respect to the Special Committee's investigation, were not part of the record before the District Court, cannot be considered on appeal, and cannot establish reversible error. *Creamette Co. v. Merlino*, 289 F.2d 569, 570 (9th Cir. 1961) ("It would be inappropriate for us to reverse the trial court on the basis of facts not incorporated in the record which the trial court considered at the time of its decision."); *Nat'l Wildlife Fed'n v. Burlington N. R.R., Inc.*, 23 F.3d 1508, 1511 n. 5 (9th Cir. 1994) (refusing to consider new evidence presented by appellants because "[f]acts not presented to the district court are not part of the record on appeal.")).

[6] Appellants cite *Rich ex rel. Fuqi Int'l, Inc. v. Yu Kwai Chong*, 66 A.3d 963 (Del. Ch. 2013) to argue that the fact that the Special Committee has purportedly not concluded its investigation to date is evidence of the Renovaro Board's bad faith. But Appellants *cannot* rely on facts post-dating the District Court's Order and that were not part of the record before the District Court to establish reversible error. *Creamette*, 289 F.2d at 570. Moreover, *Rich* is distinguishable from this case because the investigation had gone on for two years *before* the plaintiff filed a complaint, and the board had taken actions that thwarted the progress of the investigation and rendered it defunct. There are no similar allegations in the record here, other than Appellants' gripes about the transparency and length of the investigation into their thirty six separate demands, and conclusory assertions that this amounts to bad faith.

allegations with respect to the investigation do not support a finding of wrongful refusal. *See Levine v. Smith*, 591 A.2d 194, 213-14 (Del. 1991), *overruled, in part, on other grounds by Brehm v. Eisner*, 746 A.2d 244 (Del. 2000) (rejecting plaintiff's contention that the board declining to allow him to participate in its investigation supported a finding of wrongful refusal); *Boeing by Levit v. Shrontz (Boeing II)*, 1994 WL 30542, at *3 (Del. Ch. Jan. 19, 1994) (finding plaintiff's allegations that they "were not given all the information they would have liked with respect to the workings of the special committee" did not support a finding of wrongful refusal).

*Schwartz*, 175 F. Supp. 3d 390, is particularly instructive. There, the plaintiff alleged that his derivative claims should not be dismissed because the board's "investigation in response to his demand was not conducted in a fair and independent manner." *Id*. at 403. The court rejected plaintiff's contention that the board's allegedly "untimely, incomplete, and non-transparent" investigation amounted to a wrongful refusal of his demands, finding that those allegations "do not give rise to 'a reasonable doubt as to the directors' good faith and/or reasonableness of [the] investigation.'" *Id*. (citing *Boeing II*, 1994 WL 30542, at *2). Specifically, it found that "Plaintiff's argument that the investigation took too long does not create a reasonable doubt . . . [as] there is no rule that specifies how long an investigation should take," and the fact that the investigation took longer

than originally anticipated by the board was irrelevant. *Id*. at 404. The court also found unavailing plaintiff's allegations "that Defendants did not respond to his correspondence, did not update him over the course of the investigation, and did not interview him" because "the Board was not obliged to involve Plaintiff in its investigation." *Id*. (citing *Boeing II*, 1994 WL 30542, at *4 ("explaining that Board's failure to disclose post-investigation report does not raise doubts where there appears to be nothing unusual about the . . . investigation")).

Nor was the Renovaro Board's appointment of the Special Committee a concession of its disqualification from evaluating Appellants' demands, necessitating the Special Committee's intervention in order to move to dismiss. In support of this argument, Appellants cite to *Abbey v. Computer & Comm. Tech. Corp.*, 457 A.2d 368 (Del. Ch. 1983). But in *Spiegel*, the Delaware Supreme Court specifically "rejected [the] argument that *Abbey* stands for the proposition that a board of directors, *ipso facto*, waives its right to challenge a shareholder plaintiff's allegation that demand is excused by the act of appointing a special litigation committee and delegating to that committee the authority to act on the demand." *Spiegel*, 571 A.2d at 777. As such, the Renovaro Board was not barred from challenging Appellants' defective demand futility allegations and participating in this lawsuit.

Delaware law is clear, as ruled by the District Court, that "plaintiffs cannot have their cake and litigate it too." Yet that is precisely what Appellants continue to seek to do even now through this appeal by continuing to litigate on the one hand, and then complaining that they have not been kept apprised of the investigation on the other. Notably, they have not cited any authority for the proposition that the company or its board is obligated to provide them with any information regarding the investigation, especially while they maintain this litigation. Indeed, their maintaining this litigation while the Special Committee was investigating their demands is the precise reason they have not been provided any information about the investigation as no doubt any information provided would have been misconstrued as further "evidence" of bad faith since Appellants' counsel readily admitted to the District Court that Appellants will not be satisfied with the outcome, no matter what the Renovaro Board does. (2-ER-046.) Their own ill-advised actions have once again created the very situation about which they now complain.

> **b.** **The District Court Considered and Properly Rejected Appellants' Allegations of a Wrongful Refusal in Bad Faith**

Each of Appellants' allegations supporting the Renovaro Board's purported wrongful refusal of their demand in bad faith was presented to the District Court for consideration, both in the briefing on the Motion and during the hearing.

- 40 -

During the hearing in particular, the District Court was actively engaged in the discussion on this topic and asked questions of counsel related to these allegations. (2-ER-025-30.) It also set forth the disjunctive test for wrongful refusal, including the bad faith prong, in its Order dismissing the FAC, and included a discussion of Appellants' criticisms of the Special Committee's investigation that support their bad faith argument. (1-ER-006-07.) It is thus clear that the District Court considered Appellants' allegations, as well as the correct applicable legal standard, when reaching its decision to dismiss the FAC. As such, Appellants' argument that the District Court's omission of a more fulsome analysis of their allegations of bad faith amounts to reversible error must fail.

Where, as here, the District Court was presented with the arguments and evidence supporting Appellants' bad faith argument, there is no presumption that it did not consider those arguments, as Appellants advocate, and for which they cite no supportive authorities. Rather, the opposite is true. The District Court's decision not to discuss Appellants' bad faith argument in its Order constitutes an implicit rejection of those arguments and allegations, not reversible error. *Clemons v. Miss.*, 494 U.S. 738, 747 n.3 (1990) (observing that the lower court's refusal to address an argument constitutes an implicit rejection of those arguments); *see also A. J. Indus., Inc. v. U.S. Dist. Ct. for Cent. Dist. of Cal.*, 503 F.2d 384, 389 (9th Cir. 1974) ("While an opinion stating the reasons for the resolution of such an

important motion is highly desirable, we cannot find that the District Court abused its discretion by failing to state its reasons. The briefs and transcript of hearing indicate that all the issues were presented to the District Court and that the Court took ample time to consider them."); *Savage v. Hadlock*, 296 F.2d 417, 419 (D.C. Cir. 1961) (concluding that the district court's ruling in favor of the plaintiff constituted an "implicit rejection" of the defendant's argument where the defendant actually raised the argument before the court and "[t]he issue was clearly presented and all the relevant papers were before the court"); *Carlile v. Conoco, Inc.*, 23 F. App'x 963, 967 (10th Cir. 2001) ("we assume that the district court reviewed and considered defendant's arguments" where it had made clear it considered the parties' pleadings when making its ruling even though the district court did not discuss each factor and argument in its decision).

Moreover, there was no reason that the District Court needed to more fully discuss Appellants' bad faith allegations. Because the burden for adequately pleading gross negligence is *lower* than that for pleading bad faith, by failing to meet even the lesser standard for gross negligence Appellants necessarily also failed to meet the higher bad faith standard. *See, e.g., In re Walt Disney Co. Derivative Litig.*, 906 A.2d 27, 65 (Del. 2006) ("grossly negligent conduct, without more, does not and cannot constitute a breach of the fiduciary duty to act in good faith"); *In re Old Bpsush, Inc.*, 2021 WL 4453595, at *11 (D. Del. Sept. 29, 2021)

("Claiming a failure to act in good faith must allege more than gross negligence."); *Carro v. Barra*, 2018 WL 11357929, at *3 (E.D. Mich. Apr. 3, 2018) (finding failure to comply with Rule 23.1 and that "Bad faith, on the other hand, 'requires conduct that is qualitatively different from, and more culpable than' gross negligence.") (citing *Stone v. Ritter*, 911 A.2d 362, 369 (Del. 2006) and *In re Walt Disney Co*, 906 A.2d 27 at 66). Indeed, Appellants even acknowledge in their FAC that the burden for alleging bad faith is higher than that for gross negligence: "the Board has consistently acted in bad faith *or at least with gross negligence . . . .*" (2-ER-230 (emphasis added).)

For these reasons, it is clear the District Court properly considered and rejected Appellants' bad faith refusal arguments and this Court should affirm the District Court's order.

### B.    The District Court Did Not Err When It Denied Appellants' Leave to Amend Their FAC

Similarly, the District Court did not commit reversible error when it denied Appellants' leave to further amend their FAC because all of the additional alleged facts supporting bad faith identified in their Opening Brief were presented to the District Court, which reviewed them, considered them, and deemed them irrelevant. (1-ER-003 n. 1.)

The allegations of bad faith conduct Appellants believe they should have been permitted to add to a further amended complaint involve the resignation of

members of the Renovaro Board, including the independent directors appointed to the Special Committee, and the reasons provided for some of those resignations. Opening Brief at 53-54. But Appellants acknowledge, as they must, that all of these allegations of "bad faith conduct . . . would eventually be brought to the district court's attention in Plaintiff's Notice of Subsequent Events." Opening Brief at 53. Appellants fail to acknowledge in the argument in their Opening Brief, however, that the District Court specifically noted in its Order that it "has reviewed Plaintiff's Notice of Subsequent Events Related to Pending Motion to Dismiss regarding the changes within the Board of Directors' composition [and] concludes that the events referenced in the Notice are not materially relevant or pertinent to the legal issues . . . ." (1-ER-003 n. 1.) Thus, the District Court did consider these allegations, and determined that a further amended complaint would not change the outcome of its decision that Appellants had violated Delaware law when they sent a pre-suit demand to the Renovaro Board and then immediately filed a complaint alleging demand futility. The Court also noted that "further amendment would be futile at this time" because it had already granted Appellants leave to amend to fix their allegations of demand futility, which they failed to do. (1-ER-007 n. 2.) Appellants' incomplete description of the District Court's Order does not establish that it committed reversible error. The District Court provided Appellants an opportunity to cure the bright-line legal defects in their pleadings, which they

failed to do precisely because the defect is incurable, and further found that the additional allegations they proposed incorporating into a further amended complaint were irrelevant and would not change the outcome of its decision. For these reasons, its Order should be affirmed.

## VIII.  <u>CONCLUSION</u>

The District Court's Order dismissing Appellants' FAC should be affirmed in its entirety.  Their filing of a complaint alleging demand futility immediately after issuing a voluminous pre-suit demand to the Renovaro Board was a clear and incurable violation of Delaware law.  Nonetheless, the District Court provided them an opportunity to amend their complaint to cure this defect if they believed possible, and they failed to do so.  Now, Appellants want to instead argue that the Renovaro Board's failure to comply with their significant demands in less than four business days, and the Special Committee's lack of transparency into its lengthy investigation, constituted a bad faith rejection of those demands.  There is no support for these contentions in the record or any legal authorities.  The new allegations Appellants claim they should have been permitted to include in a further amended complaint are similarly deficient, and in any event, were considered by the District Court when ruling on the Motion and rejected as irrelevant.  Delaware law is clear that Appellants, as derivative plaintiffs, are not permitted to litigate claims that are simultaneously being investigated by a Special

Committee of independent directors per Appellants' demand, and dismissal was appropriate.

Dated:  June 23, 2025

VEDDER PRICE (CA), LLP

By: s/Michael J. Quinn

    Michael J. Quinn
    mquinn@vedderprice.com
    Marie E. Christiansen
    mchristiansen@vedderprice.com

1925 Century Park East, Suite 1900
Los Angeles, California 90067
T:  +1 424 204 7700
F:  +1 415 204 7702

Attorneys for Appellees

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** 24-7251

I am the attorney or self-represented party.

**This brief contains  words,** including 10,826 words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[X] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    [ ] it is a joint brief submitted by separately represented parties.
    [ ] a party or parties are filing a single brief in response to multiple briefs.
    [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** ____/s/ Michael J. Quinn_____ **Date** 6/23/2025

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 23, 2025, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the ACMS system. I certify that all participants in this appeal are registered ACMS users and that service will be accomplished by the ACMS system.

/s/ Michael J. Quinn
Michael J. Quinn